UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO.  1:10-cr-405 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| KENNETH COOPER, | ) | **ORDER** |
| | ) | (resolving Doc. 186) |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter comes before the Court on a Motion to Suppress filed by Defendant, Kenneth Cooper (Doc. 186).  Plaintiff, United States of America, timely responded to the motion and Cooper timely replied.  On March 22, 2011, the Court held an evidentiary hearing on the matter.  Upon review of the relevant filings, the hearing, and the applicable law, Cooper's Motion to Suppress is DENIED.

**I.     Facts**

On September 16, 2010, Cooper was indicted along with 23 others in connection with his role in a heroin trafficking organization operating in and around Northeast Ohio.  On September 21, 2010, members of the Federal Bureau of Investigation along with the Cleveland Police Department obtained a warrant for Cooper's arrest and went to his home to effectuate the arrest.  Officers arrived at Cooper's home at approximately 5:30 a.m. and arrested him at approximately 5:45 a.m.  Because Cooper was wearing only a tee-shirt, officers accompanied him inside to obtain shoes and pants.  Officers conducted an initial protective sweep, while an officer sat with Cooper in the kitchen.  During the protective sweep, officers found a safe located in a closet under the basement stairs.  Cooper, after being advised of his Miranda rights, indicated a willingness to talk to officers.  He informed officers, among other things, that he knew one of the

other targets in the heroin case, but denied having any involvement in heroin trafficking. When asked about the safe, Cooper stated that it contained over $40,000 in cash and other miscellaneous papers. An officer asked Cooper where the money came from and Cooper did not have an answer. Cooper also signed a written waiver of his *Miranda* rights. Officers asked Cooper for consent to search the safe as well as the rest of the home. Cooper consented both verbally and in writing. Cooper accompanied officers to the basement where he opened the safe.

The search of the safe revealed approximately $46,000. The search of the remainder of the home revealed more money, two cellular phones, miscellaneous papers and heroin. Cooper was taken into custody and the items discovered during the search of the home were confiscated.

On September 21, 2010, Cooper pled not guilty to the charges in the indictment. On October 19, 2010, Cooper filed the instant motion to suppress. The Government timely responded and Cooper replied. On March 22, 2011, the Court held a hearing on Cooper's motion. The Government presented the testimony of FBI Special Agent Benjamin Carter, the arrest team leader. Cooper testified on his own behalf. The Court now resolves Cooper's arguments.

  II.  **Applicable Law and Analysis**

    a. **Protective Sweep**

Agent Carter explained that because Cooper was not wearing shoes and pants upon arrest it was necessary to obtain appropriate clothes to transport Cooper. "It was only natural, as a matter of common sense, for the officers to go with the defendant back into the room to retrieve his possessions. The law does not require officers to leave common sense at the door." *United States v. Biggs*, 70 F.3d 913, 916 (6th Cir.1995). Accordingly, it was necessary to conduct a protective sweep.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). "While conducting a protective sweep, an officer may seize contraband found in plain view if its incriminating character is immediately apparent." *United States v. Lanier*, 285 F. App'x 239, 241 (6th Cir.2008) (citing *Horton v. California*, 496 U.S. 128, 136, (1990)).

Pursuant to *Buie*, there are "two types of warrantless protective sweeps of a residence that are constitutionally permissible immediately following an arrest." *United States v. Archibald*, 589 F.3d 289, 295 (6th Cir.2009) (citing *Buie*, 494 U.S. at 334-35). As "a precautionary matter and without probable cause or reasonable suspicion," officers arresting a person in his home may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. To search beyond immediately adjoining places, however, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

Cooper contends that the protective sweep of his home was invalid because officers did not have reasonable belief based upon specific articulable facts that the "area swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337. First, the Court notes that testimony revealed that Cooper was arrested in the threshold of a side door into the home. Directly attached to the threshold were stairs leading to the basement and stairs leading to the kitchen. Therefore, the officers could sweep the basement and the kitchen without probable cause or reasonable suspicion. *Buie*, 494 U.S. at 334. Further, a photograph of the area under the basement stairs containing a closet was introduced into evidence at the hearing. With the door to the closet closed, a reasonable officer would believe that a person could hide in the space

3

and launch an immediate attack. Id. Cooper testified that a person could not have fit into the area because the area contained a large concrete block and a safe, thus not leaving any room for a person to hide. While Cooper introduced another photograph to support the truth of this contention, it is without merit as the closet appears big enough from the outside, with the door closed, to hide a person. Further, Cooper himself testified that the door to the closet was shut when police conducted their initial sweep.

Regardless, the Court concludes that the officers had a reasonable belief based upon specific articulable facts to sweep the entire home. Agent Carter testified that prior to the execution of the arrest warrant, he learned from a confidential informant that Cooper may have been living with a woman. Carter also testified that while at the front door of the home, he heard noises, but that at the time of the arrest, he could not attribute the noise to any one person or know how many people were in the home.

Although the Court recognizes that the Government places much emphasis on Cooper's extensive criminal history of drug and weapon charges, this is not a determinative factor in whether the officers had a reasonable suspicion based upon articulable facts that someone else was in the home that would pose a threat to them. See *U.S. v. Colbert*, 76 F.3d 773, 777 (6th Cir.1996) (concluding that the dangerousness of the individual arrested is not germane to the inquiry into whether arresting officers reasonably believed that someone else inside the home might pose a danger to them.) "Past dangerousness of the individual is not the sole issue, rather it is facts 'giving rise to a suspicion of danger from attack by a third party during the arrest.'" *U.S. v. Carpenter*, No. 3:10-cr-109, 2011 WL 540528, at *15 (E.D. Tenn.). Regardless, the Court concludes that testimony at the hearing established a reasonable suspicion of articulable facts of danger from a third party.

The Sixth Circuit has concluded that police officers had reason to believe that another person was present based on "shuffling" sounds coming from an area near the place of arrest. See *United States v. Taylor*, 248 F.3d 506, 510, 514 (6th Cir.2001). Cooper testified that there were woman's clothing lying on the basement floor, which presumably officers would have seen when they conducted the protective sweep of the basement. The fact that Carter heard movement inside the home in conjunction with the information from the CI that a woman might have resided in the home and woman's clothing lying on the basement floor would lead a reasonable officer to believe that another person might be in the home, posing a danger to officers. This is not a case where, as Cooper contends, the officers had *no information* that another person might be present in the home during the arrest.

### b.  Miranda Warnings and Waiver

A defendant questioned while in custody must be advised of his Fifth Amendment rights pursuant to *Miranda v. Arizona*, 384 U.S. 436. It is clear from the testimony at the hearing that Agent Carter verbally read Cooper his *Miranda* rights, and that Cooper chose to waive those rights and speak to the officers. The Government bears the burden to establish that Cooper validly waived his right to counsel and his right to remain silent. At the hearing, Cooper testified that his *Miranda* rights were read to him and that he never asked for counsel and continued to talk to the officers. Further, Cooper signed a written form acknowledging his *Miranda* rights and waiving those rights.

Cooper appears to argue that he was coerced into waiving his rights. Cooper testified that he signed the waiver of rights form and that no one threatened him or held a gun to him. He stated that officers told him that he could help himself if he cooperated with them and the sentence he could be facing. Cooper stated that he felt that this was a threat and therefore signed

5

the form. The Court finds this testimony not credible. Cooper has a lengthy criminal history and therefore has extensive involvement with the criminal justice system. It is not believable that despite this history dating back to 1970 that Cooper was not aware of his *Miranda* rights or that he felt that he had no choice but to speak with officers.

Finally, Cooper makes a vague argument that even assuming he waived his *Miranda* rights, that there is a difference between waiving his Fifth Amendment rights to counsel and his Sixth Amendment right to counsel. Because Cooper was indicted prior to his arrest, he contends that his Sixth Amendment right to counsel attached and that he did not waive that right. Cooper cites this Court to *Montejo v. Louisiana*, 129 S.Ct. 2079, 2085, to support his contention that once the adversary judicial process had been initiated, here when the indictment was issued, he was guaranteed the right to have counsel present at all critical stages of the proceedings. While clearly an accurate statement of law, Cooper does not appear to recognize that "the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing and intelligent." *Id.* (Citations omitted). Further, "when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the *Fifth* Amendment." *Id.* citing *Patterson v. Illinois*, 487 U.S. 285, 296 (1988). As explained above, Cooper knowingly and voluntarily waived his right to counsel after being read his *Miranda* rights. Therefore, he was sufficiently aware of his right to counsel for purposes of the Sixth Amendment, and any contention to the contrary is overruled.

    c. **Consent**

Although the Fourth Amendment bars unreasonable searches, "[i]t is well-settled that a person may waive [her] Fourth Amendment rights by consenting to a search." *United States v.*

*Howard*, 216 F. App'x 463, 469 (6th Cir.2007) (quoting *United States v. Carter*, 378 F.3d 584, 587 (6th Cir.2004)) (internal quotation marks omitted). The Government has the burden to show that consent to a warrantless search "was freely and voluntarily given and was not the result of coercion, duress, or submission to a claim of authority." *United States v. Arnold*, 486 F.3d 177, 213 (6th Cir.2007) (citing *United States v. Wellman*, 185 F.3d 651, 657 (6th Cir.1999)).

Cooper contends that the consent to search his home and of his safe was coerced and/or that his consent was not knowing and therefore invalid. This argument is without merit. In this case, the Government has produced a written consent form, signed by Cooper, giving officers consent to search the home. Further, Agent Carter testified that Cooper specifically consented to the search of the safe and in fact opened the safe for the officers.

Cooper contends that the officers informed him that if he did not open the safe himself, they would get a warrant. He further contends that he was told he had been indicted and was facing a lengthy sentence and that he could help himself if he cooperated. Cooper contends that these are "factual threats." In the Sixth Circuit, a "defendant must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police.'" *United States v. Higgins*, 127 F. App'x 201, 204 (6th Cir.2005) (quoting *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir.1995)). Agent Carter denied telling Cooper that if he did not open the safe he would get a warrant and open it anyway. Even if this Court were to believe Cooper's testimony that he *subjectively* believed these statements to be threats, these factual statements do not form the basis of an *objectively* improper action on the part of the police. Finally, Cooper has an extensive criminal history indicating his involvement in the justice system. See *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir.1998). Therefore, it is reasonable to conclude that he Cooper was not coerced into consenting to the search.

Cooper also stated that he did not read the consent to search form and did not know it was a consent to search form when he signed. Agent Carter stated that Cooper consented to the search and willingly signed the consent to search form. In the face of conflicting testimony between Agent Carter and Cooper, the Court concludes that Cooper's testimony was not credible. See *United States v. Dillard*, 438 F.3d 675, 681 (6th Cir.2006) (district courts have significant discretion when the issue of consent depends upon the credibility of witnesses. Accordingly, the Court concludes that the consent was valid.

### d. Seizure

Cooper asserts an unsupported statement that "even supposing there was consent to search, this consent did not extend to any seizure of these monies—a warrant was required." Given the facts known to officers at the time of the seizure, a warrantless seizure of the money was appropriate. As the Court has concluded above, officers lawfully conducted a consent search of the safe and discovered over $40,000 in cash. When viewed in light of the facts that Cooper was indicted for his part in a heroin trafficking organization, his admission that he was unemployed, and that he could not explain where the money came from, the incriminating character of the money was "immediately apparent" and therefore properly seized. *Horton v. California*, 496 U.S. 128, 136-37 (1990); see, also, *Arizona v. Hicks*, 480 U.S. 321, 326-327 (1987).

### III. Conclusion

For the reasons set forth herein, Cooper's Motion to Suppress is DENIED.

IT IS SO ORDERED.

DATED: March 24, 2011             */s/ John R. Adams*_____
                                                      Judge John R. Adams
                                                      UNITED STATES DISTRICT COURT